NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13720

COMMONWEALTH  vs.  JORGE L. SANTANA.


Essex.     September 8, 2025. - February 4, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.


Practice, Criminal, Plea, Assistance of counsel, Affidavit, Findings by judge, Judicial discretion.  Constitutional Law, Plea, Assistance of counsel.  Alien.  Controlled Substances.



Complaint received and sworn to in the Salem Division of the District Court Department on June 6, 2017.

A motion to withdraw a guilty plea, filed on April 21, 2022, was heard by Allen G. Swan, J.

After review by the Appeals Court, 104 Mass. App. Ct. 1117 (2024), the Supreme Judicial Court granted leave to obtain further appellate review.


Casey L. Riley (Danya Fullerton also present) for the defendant.
Jennifer D. Cohen, Assistant District Attorney, for the Commonwealth.
Jennifer Klein & Caitlin Perry, Committee for Public Counsel Services, Edward Crane, & Maria Durant, for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

WENDLANDT, J.  In 2018, the defendant, Jorge Santana, a noncitizen lawfully residing in the United States, pleaded guilty to possession of a controlled substance with intent to distribute, subjecting him to automatic deportation from the United States.  This case presents the question whether the defendant has made an adequate showing to warrant an evidentiary hearing on his motion to withdraw his plea on the basis that plea counsel failed to inform him that his plea rendered his deportation virtually mandatory in violation of his constitutional right to the effective assistance of counsel.  See Padilla v. Kentucky, 559 U.S. 356, 374 (2010) (Sixth Amendment to United States Constitution requires counsel to advise client whether plea carries risk of deportation); Commonwealth v. Sylvain, 466 Mass. 422, 436 (2013), S.C., 473 Mass. 832 (2016) (same under art. 12 of Massachusetts Declaration of Rights).

The motion judge, who was also the plea judge, denied the motion without an evidentiary hearing primarily on the basis that plea counsel's affidavit averring that he did not tell the defendant that he would be automatically deported was not credible because it was inconsistent with counsel's representation during the plea colloquy that he had discussed the immigration consequences of the plea with his client.

Contrary to the judge's determination, however, counsel's affidavit was not inherently inconsistent with his representations during the colloquy and any inconsistency could not be resolved on the papers alone. Accordingly, we vacate the denial of the motion to withdraw the defendant's guilty plea and remand for further proceedings consistent with this opinion.[1]

1. Background. In June 2017, an officer of the Danvers police department (first officer) observed the defendant, who was in a vehicle, exchange items with a known heroin user, who was in a different vehicle, in a supermarket parking lot. Suspecting that the exchange involved illegal drugs, the first officer followed the defendant's vehicle for several minutes and eventually instructed a second officer, whose cruiser was closer to the defendant, to initiate a stop. As the first officer approached the defendant's vehicle, he observed the defendant "struggling to swallow something." Upon opening the defendant's mouth, he saw "two plastic baggies containing a light tan powder" consistent with heroin. A subsequent search yielded three tightly folded one hundred dollar bills, an additional $790 in cash, and paraphernalia consistent with the storage and concealment of illegal drugs. The defendant was arrested and charged with one count of possession with intent to distribute a

---

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and Boston Bar Association.

class A controlled substance (heroin), in violation of G. L. c. 94C, § 32 (a).[2]

a. Plea colloquy. In November 2018, the defendant, who was born in the Dominican Republic, pleaded guilty to the charge; he had immigrated to the United States approximately three years earlier as a legal permanent resident. Relevant to the issue on appeal, after issuing the standard oral warnings,[3]

_____

[2] Pursuant to G. L. c. 94C, § 32 (a), a person convicted of possession of a class A controlled substance with intent to distribute may be sentenced to imprisonment "for not more than ten years" in State prison or "for not more than two and one-half years" in a house of correction.

[3] At the plea colloquy, the judge advised the defendant as required by G. L. c. 278, § 29D, which provides:

"If you are not a citizen of the United States, you are hereby advised that the acceptance by this court of your plea of guilty, plea of nolo contendere, or admission to sufficient facts may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States" (emphasis added).

He also advised the defendant pursuant to a prior version of Mass. R. Crim. P. 12 (c) (3) (A) (iii), as appearing in 470 Mass. 1501 (2015), then in effect, which provided:

"[I]f the offense to which the defendant is pleading guilty, nolo contendere, or admitting to sufficient facts is under federal law one that presumptively mandates removal from the United States and federal officials decide to seek removal, it is practically inevitable that this conviction would result in deportation, exclusion from admission, or denial of naturalization under the laws of the United States" (emphases added).

"[S]uch warnings are 'not an adequate substitute for defense counsel's professional obligation to advise her client of the

the judge specifically asked plea counsel, "[I]f there are any immigration consequences [of this plea], have you discussed those pursuant to Commonwealth against Clarke?" See Commonwealth v. Clarke, 460 Mass. 30 (2011). Counsel replied, "Yes, I have, Your Honor." After accepting the plea, the judge sentenced the defendant to six months of incarceration, suspended for one year with conditions of probation, including, inter alia, that he maintain employment and commit no further violations of the law.[4]

---

likelihood of specific and dire immigration consequences that might result from such a [guilty] plea.'" Commonwealth v. DeJesus, 468 Mass. 174, 177 n.3 (2014), quoting Commonwealth v. Clarke, 460 Mass. 30, 48 n.20 (2011).

   [4] The defendant and plea counsel signed the standard tender of plea form, which included an acknowledgement by the defendant that a guilty plea may have immigration consequences and an affirmation by plea counsel that he "explained to the defendant the legal rights and consequences referred to" in the form. The plea judge noted on the defendant's tender of plea form: "Counsel has advised immigration consequences." Specifically, the form restated the warnings that the judge orally delivered pursuant to G. L. c. 278, § 29D, and Mass. R. Crim. P. 12 (c) (3) (A) (iii) (b), as appearing in 470 Mass. 1501 (2015):

   "I understand that if I am not a citizen of the United States, the acceptance by this court of my plea of guilty . . . may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States. If the offense to which I am pleading guilty . . . is under federal law one that presumptively mandates removal from the United States and federal officials decide to seek removal, it is practically inevitable that this disposition would result in deportation, exclusion from admission, or denial of naturalization under the laws of the United States" (emphases added).

b.   Removma proceedings.   Approximately two years and three months later, in February 2021, while returning to the United States from the Dominican Republic alongside his family, immigration officials detained the defendant.   According to the defendant, immigration officials informed him that he "would be put into removal proceedings and faced deportation" due to his conviction; the defendant claims that prior to his detention, he was unaware of the severe immigration consequences of his plea.[5]

c.   Motion to withdraw.   In April 2022, approximately fourteen months after his detention by immigration officials, the defendant filed a motion to withdraw his guilty plea on the basis that he received ineffective assistance of plea counsel.

---

[5] The immigration consequences of a conviction of G. L. c. 94C, § 32 (a), are clear.   Under 8 U.S.C. § 1227(a)(2)(B)(i):

> "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of [thirty] grams or less of marijuana, is deportable" (emphases added).

We have acknowledged that, under Federal law, a defendant convicted of possession of a controlled substance with intent to distribute has "virtually no avenue for relief from deportation once convicted of that crime."  DeJesus, 468 Mass. at 181, citing Moncrieffe v. Holder, 569 U.S. 184, 187 (2013) (Federal statute "prohibits the Attorney General [of the United States] from granting discretionary relief from removal to an aggravated felon, no matter how compelling his case").

In support of his motion, the defendant submitted two affidavits -- his own and that of plea counsel.

The defendant averred that although plea counsel had advised him that a guilty plea would bar him from obtaining United States citizenship, counsel did not warn him that the plea would terminate his permanent resident status and render him automatically deportable without eligibility for relief in Federal immigration proceedings.  The defendant also averred that, had he been informed accurately of the immigration consequences of his plea, he would not have accepted the plea and knowingly jeopardized his ability to remain in the United States with his wife and two sons, who depend on him.  Instead, the defendant averred, he would have urged plea counsel to resolve the case so as to avoid immigration consequences and, if that were not possible, to proceed to trial.

Plea counsel averred that, at the time of the plea, he "would have explained to [the defendant] that he would be subject to deportation but not that he would be automatically deported, mandatorily detained by [Federal immigration officials], and ineligible for any relief in Immigration Court." Plea counsel further averred that he "now know[s] that such advice is inadequate pursuant to Padilla v. Kentucky, [559 U.S. 356 (2010),] and its Massachusetts progeny, including Commonwealth v. DeJesus, 468 Mass. 174 (2014)."  See DeJesus,

supra at 181-182 & n.5 (where immigration consequence was clear, plea counsel "was obligated to provide to his client, in language that the client could comprehend, the information that presumptively mandatory deportation would have been the legal consequence of pleading guilty").

The defendant requested an evidentiary hearing. The motion judge, who was also the plea judge, denied this request, implicitly finding that the defendant had not made an adequate showing to merit one.

Evaluating the affidavits of the defendant and plea counsel against his contemporaneous notes from the plea colloquy, his recollection,[6] and the parties' arguments at a nonevidentiary hearing, the judge found that the affidavits were not credible. The judge discredited the defendant's affidavit as belatedly submitted four years after the plea. The judge also found the defendant's affidavit to be self-serving but recognized that the sworn statements were corroborated by plea counsel's affidavit. Turning to the latter, the judge determined that plea counsel's affidavit was not credible on the sole basis that it contradicted counsel's representation during the plea colloquy

---

[6] At the nonevidentiary hearing, the motion judge noted that he listened to the recording of the plea hearing to refresh his recollection.

that he had advised his client of the immigration consequences of a guilty plea as required by Clarke, 460 Mass. 30.

The Appeals Court affirmed in an unpublished memorandum and order pursuant to its rule 23.0. See Commonwealth v. Santana, 104 Mass. App. Ct. 1117 (2024). We granted the defendant's application for further appellate review.

2. Discussion. a. Standard of review. "A motion to withdraw a guilty plea is treated as a motion for a new trial . . . ." DeJesus, 468 Mass. at 178. "We review a judge's decision to deny a motion for a new trial without holding an evidentiary hearing for a significant error of law or other abuse of discretion" (quotation and citation omitted). Commonwealth v. Alemany, 488 Mass. 499, 517-518 (2021).

Where, as here, the motion judge was also the plea judge, substantial deference is afforded to the judge's determinations, recognizing the judge's superior position to assess the credibility of the defendant's claims.[7] Commonwealth v. Lys, 481

_____

[7] The defendant contends that our review is de novo because no evidentiary hearing was held and, therefore, we are in as good a position as the judge to evaluate the documentary record, including the affidavits. This argument overlooks the full context of the judge's decision. The ruling was not, as the defendant suggests, based solely on a cold review of the transcript and written submissions. Rather, the motion judge properly relied in part on his unique vantage point as the plea judge in assessing the credibility of the affidavits. See Sylvain, 473 Mass. at 835 ("To the extent that a motion judge was in a better position to evaluate the credibility of the affiants, we will defer to the judge's assessment of the

Mass. 1, 4 (2018).  See Commonwealth v. Goparian, 496 Mass. 348, 356 (2025) (where motion judge was also trial judge "we afford special deference to" judge's decision to deny motion for new trial without evidentiary hearing).  "Reversal for abuse of discretion in such circumstances 'is particularly rare.'"  Id. at 357, quoting Commonwealth v. Rice, 441 Mass. 291, 302 (2004). An abuse of discretion is not measured by whether the appellate court would have reached the same conclusion as the judge, see Commonwealth v. Lane, 462 Mass. 591, 597 (2012); nonetheless, the judge's "discretion . . . 'is not boundless and absolute,'" Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), S.C., 478 Mass. 189 (2017), quoting Commonwealth v. Genius, 402 Mass. 711, 714 (1988).  Under the abuse of discretion standard, we will affirm unless the judge's decision resulted from "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

In determining whether an evidentiary hearing is required in connection with a motion for a new trial, the motion judge

---

credibility, weight, and impact of the affidavits submitted in support of a motion to withdraw a guilty plea" [quotation omitted]).  Under the circumstances, we review the reasons the judge provided for rejecting the affidavits to assess whether the judge acted within his discretion.  See discussion infra.

must examine whether the defendant's "motion and affidavits present a 'substantial issue'" (citation omitted). Lys, 481 Mass. at 5. See Commonwealth v. Chatman, 466 Mass. 327, 334 (2013) ("An evidentiary hearing is required only where a 'substantial issue' has been raised"). In assessing whether a substantial issue has been raised, the judge must consider (1) "the seriousness of the issue itself" and (2) "the adequacy of the defendant's showing on that issue." Commonwealth v. Denis, 442 Mass. 617, 628 (2004). To make an adequate showing, a defendant "need not prove the issue raised," but the motion and supporting materials "must at least contain sufficient credible information to cast doubt on the issue." Id. at 629.

b. Seriousness of the issue: ineffective assistance of counsel. The defendant's motion to withdraw his plea on the ground that he received ineffective assistance of counsel "raises an issue of constitutional importance that readily qualifies as a serious issue" (quotation and citation omitted). Denis, 442 Mass. at 629. It is well settled that, in view of the reality that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence," constitutionally competent counsel "must inform her client whether his plea carries a risk of deportation" (quotation and citation omitted). Padilla, 559 U.S. at 368, 374 (setting forth Sixth Amendment requirement).

See Sylvain, 466 Mass. at 436 (art. 12 requires that trial counsel "accurately advise a noncitizen client of the deportation consequences of a guilty plea or a conviction at trial").

c. Adequacy of showing. The more difficult question is whether the judge erred in finding that the defendant failed to make an adequate showing warranting an evidentiary hearing. The judge recognized that the defendant's affidavit, which he found to be not credible on the grounds that it was tardy and self-serving, was corroborated by plea counsel's affidavit; but he found the latter to be not credible on the basis that it was contradicted by counsel's representations during the plea colloquy. Accordingly, we turn to examine plea counsel's affidavit, focusing on the judge's stated reason for discrediting it. See Lys, 481 Mass. at 6-7 (examining stated reason that motion judge, who was also plea judge, credited defendant's affidavit that plea counsel had not advised him of immigration consequences and emphasizing importance of judge providing reasons for denying motion to assist appellate court in assessing whether determination constituted abuse of discretion); Commonwealth v. Vaughn, 471 Mass. 398, 405 (2015) (appellate court looks to judge's "reasons for accepting or rejecting a particular affidavit" to assess "whether the judge

acted within his or her discretion" in denying motion for new trial).

"A judge is not required to credit assertions in affidavits submitted in support of a motion . . . and may evaluate them in light of factors pertinent to credibility." Commonwealth v. Torres, 469 Mass. 398, 403 (2014). Here, the judge examined plea counsel's affidavit in light of counsel's representation during the plea colloquy that he had discussed the plea's immigration consequences with the defendant as required by Clarke, 460 Mass. at 45-46. The judge then discredited the affidavit because he found that it "contradict[ed]" the recorded plea colloquy. Thus, the foundation of the judge's credibility finding was his determination that counsel's statements during the colloquy were irreconcilable with his affidavit.

But that determination is infirm. Counsel's statements at the colloquy regarding compliance with Clarke, on the one hand, and his present averments that he would have told the defendant that he was subject to deportation, but not that he was automatically deportable, on the other hand, are not inherently in tension.

Specifically, in Clarke, we did not have occasion to analyze the adequacy of counsel's advice regarding the immigration consequences of a plea because counsel did not inquire into the defendant's immigration status at all, let

alone provide advice regarding the immigration consequences of a guilty plea. Clarke, 460 Mass. at 45-46. Instead, in concluding that Padilla applied retroactively,[8] we summarized the United States Supreme Court's holding in Padilla in various ways.

We stated, for example, that "[i]n Padilla, the . . . Supreme Court held that defense counsel's failure to advise a client that a consequence of his guilty plea likely would be deportation constituted ineffective assistance of counsel" (emphasis added). Clarke, 460 Mass. at 31, citing Padilla, 559 U.S. at 368-369. We also observed that "defense counsel [in Padilla] was ineffective by failing to advise her client of the virtually automatic deportation consequences of his guilty plea" (emphasis added). Clarke, supra at 35. We further summarized the Supreme Court's central holding as "[constitutionally competent] counsel must inform her client whether his plea

---

[8] In Sylvain, we affirmed the central holding of Clarke, concluding that as a matter of Massachusetts law, Padilla did not announce a new rule, and therefore applied retroactively. Sylvain, 466 Mass. at 436. See Danforth v. Minnesota, 552 U.S. 264, 279-280 (2008) (concluding that "considerations of comity militate in favor of allowing state courts to grant [collateral] relief to a broader class of individuals than is required by [the retroactivity test under Federal law]"). But see Chaidez v. United States, 568 U.S. 342, 358 (2013) (holding that, for purposes of Federal law, Padilla announced new rule and therefore did not apply retroactively to defendants whose convictions became final prior to issuance of that decision).

carries a <u>risk of deportation</u>" (emphasis added).  <u>Id</u>. at 45,
quoting <u>Padilla</u>, <u>supra</u> at 374.  See <u>Clarke</u>, <u>supra</u> at 42, 46,
quoting <u>Padilla</u>, <u>supra</u> at 367 (noting <u>Padilla</u>'s reliance on
national guidelines supporting view that "counsel must advise
her client regarding the <u>risk of deportation</u>" [emphasis added]).
Additionally, specifically addressing the defendant's plea of
guilty of possession with intent to distribute a controlled
substance in violation of G. L. c. 94C, § 32A, we stated that
the conviction "made him <u>subject to deportation</u>" and that
counsel's conduct was deficient as she failed to advise her
client that "his guilty pleas <u>carried a substantial risk of
deportation</u>" (emphases added).  <u>Clarke</u>, <u>supra</u> at 46.

Thus, in <u>Clarke</u>, we referenced the advice required under
<u>Padilla</u> variously, including as relevant here that counsel must
advise a defendant that a conviction of possession with intent
to distribute a controlled substance would render him "subject
to" deportation.[9]  <u>Id</u>.  In other words, counsel's confirmation at

---

[9] In doing so, we mirrored the language used by the Supreme
Court in <u>Padilla</u>.  See <u>Padilla</u>, 559 U.S. at 368 ("<u>Padilla</u>'s
counsel could have easily determined that his plea would make
him <u>eligible for deportation</u> simply from reading the text of the
statute, which . . . specifically commands removal for [nearly]
all controlled substances convictions" [emphasis added]); <u>id</u>. at
369 ("The consequences of Padilla's plea could easily be
determined from reading the removal statute, his <u>deportation was
presumptively mandatory</u>, and his counsel's advice [that
conviction would not result in removal] was incorrect" [emphasis
added]); <u>id</u>. at 373 ("The severity of deportation -- 'the
equivalent of banishment or exile' . . . -- only underscores how

the colloquy that he advised his client as required by <u>Clarke</u> and his later averment that he only would have told the defendant that he would be "subject to" deportation are not inconsistent.  Indeed, his further averment that he now understands that his advice would not meet the requirements of <u>DeJesus</u> supports such a conclusion.

In <u>DeJesus</u>, we recognized that the Court in <u>Padilla</u> "used various terms to describe a defense attorney's obligation to give correct advice where the consequence of a guilty plea might make a defendant subject to adverse immigration consequences, but did not formulate the precise language that would satisfy that obligation, and understood that the content of the advice would depend on the circumstances."  <u>DeJesus</u>, 468 Mass. at 179.  Accordingly, we clarified that where Federal law is clear that the consequence of a guilty plea is virtually automatic

_____

critical it is for counsel to inform her noncitizen client that <u>he faces a risk of deportation</u>" [emphasis added; citation omitted]); <u>id</u>. at 374 ("we now hold that counsel must inform her client whether his plea carries a <u>risk of deportation</u>" [emphasis added]).  Significantly, the Supreme Court similarly stated, "We agree with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him <u>subject to automatic deportation</u>" (emphasis added).  <u>Id</u>. at 360.  Thus, while both <u>Clarke</u> and <u>Padilla</u> set forth that counsel must inform her client of the clear immigration consequences of a guilty plea, neither this court nor the Supreme Court addressed how counsel must meet that obligation; indeed, each suggested that informing the client that he was "subject to" deportation sufficed, a point the dissent seems to overlook. <u>Post</u> at    .  See discussion <u>infra</u>.

deportation, as it is for a conviction of possession of a controlled substance with intent to distribute, plea counsel is "obligated to provide to his client, in language that the client [can] comprehend, the information that presumptively mandatory deportation would [be] the legal consequence of pleading guilty."[10]  Id. at 181.

There, counsel informed the defendant that he would be "eligible for" deportation, that he "face[d] being deported and being denied reentry into the United States," and, pertinently, that he was "subject to the ramifications of deportation."  Id. at 176.  Id. at 185 (Cordy, J., dissenting).  We concluded that such advice was insufficient to meet the requirements of Padilla because it "did not convey what is clearly stated in Federal law" -- that the defendant's "deportation [is] practically inevitable."[11]  Id. at 181.  Thus, counsel's affirmation at the colloquy that he complied with Clarke does not inherently contradict his later averments that he would have told the

---

[10] We declined to "dictate the precise language that must be employed, as each case will present different circumstances." DeJesus, 468 Mass. at 181 n.5.

[11] The term "subject to" can suggest some degree of discretion in the decision.  Cf. Commonwealth v. Williamson, 462 Mass. 676, 680-682 (2012) (construing phrase "shall . . . be subject to community parole supervision for life" [CPSL] to afford sentencing judge discretion whether to impose CPSL).

defendant that he would be "subject to" deportation and that such advice was deficient under DeJesus.

To be sure, it may be that plea counsel went further and told the defendant in words that the defendant could comprehend, as required by DeJesus, of the virtually automatic deportation consequences of his guilty plea or similarly clear advice, contrary to his averments in his affidavit that he did not. But this highlights the need for an evidentiary hearing.

While we defer to the motion judge's findings especially where, as here, he was the plea judge, those findings do not support the judge's decision to discredit counsel's affidavit altogether without an evidentiary hearing; indeed, it appears the judge did not recognize the ambiguity and concluded instead that counsel provided accurate immigration advice based solely on counsel's affirmative answer during the colloquy to the judge's question whether, if there were any immigration consequences to the plea, counsel had provided advice pursuant to Clarke. See Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 550 (2014) ("[W]hen the defendant raises a substantial issue of fact, it is the better practice to conduct an evidentiary hearing"). See also Commonwealth v. Al Kenani, 100 Mass. App. Ct. 288, 293 (2021) (remanding for evidentiary hearing because "motion judge could not reasonably find that plea counsel informed the defendant that his deportation would be virtually

certain if he accepted the plea agreement without holding an evidentiary hearing to explore the context and meaning of [plea counsel's] statement"); Commonwealth v. Gordon, 82 Mass. App. Ct. 389, 401 (2012) (observing necessity of evidentiary hearing "to address ambiguities and gaps in the affidavits").

The Commonwealth contends that the judge also discredited plea counsel's affidavit because counsel averred to what he "would have" done, suggesting that "plea counsel may not have specific knowledge as to this case."  For its part, the dissent determines that this is an independent rationale for discrediting plea counsel's affidavit and finds counsel's failure to state his "customary practice" as opposed to what he "would have" done suspicious. Post at   .  The judge, however, did not rest his credibility finding on this language from plea counsel's affidavit or any perceived lack of specific knowledge. On remand, the judge is, of course, free to consider the Commonwealth's argument, as well as those now marshaled by the dissent,[12] id., in determining whether alternative grounds, or any findings as to the adequacy of the defendant's showing on the issue of prejudice, see note 13, infra, render an

---

[12] The judge did not discredit plea counsel's affidavit based on perceived inconsistency with the defendant's affidavit. Instead, the judge acknowledged that the defendant's affidavit was "not without corroboration" in the sworn statement of plea counsel.

evidentiary hearing unnecessary; we decline to do so in the first instance.  See Lys, 481 Mass. at 7-8 (remanding motion for new trial to plea judge, who was also motion judge, with instructions to provide express findings relating to whether defendant received ineffective assistance of counsel and was prejudiced thereby rather than addressing merits in first instance); Sylvain, 466 Mass. at 439 (remanding for further findings on motion to vacate plea, and if necessary to hold evidentiary hearing, on issue of prejudice in recognition of "the benefit of any findings or credibility assessments" of motion judge in this regard).[13]

---

[13] To prevail on a claim of ineffective assistance of counsel, the defendant ultimately must show that (1) counsel's performance fell measurably below that of an ordinary fallible lawyer, and (2) the defendant suffered prejudice as a result. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  In the context of a guilty plea, prejudice is shown only where there is "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial" (quotation and citation omitted).  Clarke, 460 Mass. at 47.  See Lee v. United States, 582 U.S. 357, 364-365 (2017).  The defendant must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Clarke, supra, quoting Padilla, 559 U.S. at 372.  To prove that rejecting the plea would have been rational, the defendant "bears the substantial burden of showing that (1) he had an 'available substantial ground of defence,' that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty."  Clarke,

    3.  Conclusion.  We vacate the order denying the
defendant's motion to withdraw his guilty plea and remand for
further proceedings consistent with this opinion.

                              So ordered.

_____

supra at 47-48, quoting Saferian, supra, and Hill v. Lockhart,
474 U.S. 52, 60 (1985).  See, e.g., Lee, supra at 369 (although
defendant had no viable defense, he "adequately demonstrated a
reasonable probability that he would have rejected the plea had
he known it would lead to mandatory deportation").

     Here, the defendant averred that he would not have accepted
the plea deal had he been advised accurately as to the
immigration consequences.  Because the judge discredited
counsel's affidavit, he did not reach the question of prejudice.
We decline to do so in the first instance.  See Sylvain, 466
Mass. at 439 (remanding with instructions "to provide findings
relating to the issue of prejudice and, if necessary, to hold an
. . . evidentiary hearing," where defendant averred that he
would have elected to go to trial but for his attorney's
erroneous advice but motion judge made no findings or
credibility assessments as to defendant's claims of prejudice).

GEORGES, J. (dissenting, with whom Gaziano, J., joins).
Just last term, we reaffirmed our long-standing precedent that
"[r]eversal for abuse of discretion [where the motion judge was
also the trial judge] 'is particularly rare.'"  Commonwealth v.
Goparian, 496 Mass. 348, 357 (2025), quoting Commonwealth v.
Rice, 441 Mass. 291, 302 (2004).[1]  In my view, today's decision
departs from that settled principle -- not because the court
misstates the governing standard, but because it applies that
standard in a manner that contracts the discretion long afforded
to motion judges acting as gatekeepers in assessing the need for
an evidentiary hearing under Mass. R. Crim. P. 30 (c) (3), as
appearing in 435 Mass. 1501 (2001).  Rather than deferring to
the judge who presided over the plea hearing and later ruled on
the motion to withdraw the defendant's guilty plea, the court
concludes that an evidentiary hearing is required and remands
for further proceedings, notwithstanding the highly deferential
standard that governs our review.

---

[1] See, e.g., Commonwealth v. Upton, 484 Mass. 155, 162
(2020) ("Reversal for abuse of discretion . . . is particularly
rare" where motion judge also conducted trial [quotation and
citation omitted]); Commonwealth v. Lugo, 482 Mass. 94, 102
(2019) ("[r]eversal for abuse of discretion is particularly rare
where, as here, the judge acting on the motion was also the
trial judge" [quotation and citation omitted]); Cohen v.
Peterson, 320 Mass. 315, 316 (1946) ("it is only in rare
instances that it can be ruled that there has been an abuse of
discretion").

That approach departs from our repeated admonition that, in assessing whether there has been an abuse of discretion, "it is irrelevant what the Justices of this court would have done had they been in the position of the [motion] judge" (citation omitted). Commonwealth v. Lane, 462 Mass. 591, 597 (2012). Even accepting the court's articulation that a judge's discretion is not "boundless," the question remains whether the ruling fell outside the range of reasonable alternatives. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). In my view, it did not. Here, the denial of the defendant's motion without an evidentiary hearing accords with well-established precedent and falls comfortably within the judge's broad discretion. See Commonwealth v. Denis, 442 Mass. 617, 628-629 (2004); Commonwealth v. Goodreau, 442 Mass. 341, 355 (2004).

Because I would affirm the judge's ruling, I respectfully dissent.

Discussion. 1. Standard of review. A postsentence motion to withdraw a guilty plea is treated as a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See Commonwealth v. Nikas, 431 Mass. 453, 456 (2000). The denial of such a motion is reviewed for "significant legal error or abuse of discretion." Goparian, 496 Mass. at 356. That review is sharply circumscribed. The question is not whether this court "would have reached a different result," but

whether the ruling reflects "a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L., 470 Mass. at 185 n.27. See Lane, 462 Mass. at 597.  Where, as here, the judge also presided over the plea hearing, that exercise of discretion is entitled to particular deference.  See Commonwealth v. Scott, 467 Mass. 336, 344 (2014).

An evidentiary hearing is not required where the motion and supporting materials fail to raise a substantial issue.  Denis, 442 Mass. at 628.  Whether a substantial issue exists turns on two considerations:  (1) the seriousness of the issue, and (2) the adequacy of the defendant's factual showing.  Goparian, 496 Mass. at 357.  Both prongs must be satisfied.  A serious issue alone does not warrant a hearing absent credible factual support.  See Commonwealth v. Alemany, 488 Mass. 499, 520 (2021) (evidentiary hearing was not warranted where motion judge concluded that, "although the issue raised was serious, the defendant did not make an adequate showing of a credible claim").

In performing this assessment, motion judges act as gatekeepers.  As we have explained, "[t]he primary purpose of Mass. R. Crim. P. 30 (c) (3) is to encourage the disposition of motions for postconviction relief on the basis of affidavits

alone," and the decision whether to hold an evidentiary hearing rests within "the sound discretion of the judge" (citation omitted). Commonwealth v. Vaughn, 471 Mass. 398, 404 (2015). Ultimately, the credibility, weight, and significance of the affidavits are matters committed "entirely" to the judge's discretion. Id. at 405.

Although the defendant's submissions need not conclusively establish ineffective assistance of counsel, they must at least present "sufficient credible information to cast doubt on the issue" (citation omitted). Commonwealth v. Upton, 484 Mass. 155, 162 (2020). To prevail on such a claim, the defendant must satisfy the familiar two-prong test of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), by demonstrating that counsel's performance fell measurably below that of an ordinary fallible lawyer, and that the defendant was prejudiced as a result. See Commonwealth v. Lavrinenko, 473 Mass. 42, 51 (2015).

I agree with the court that a claim of ineffective assistance of counsel is a serious one and, as such, satisfies the first prong of the substantial issue inquiry. Ante at . My analysis therefore turns to the second prong: the adequacy of the defendant's factual showing.

2. Adequacy of the defendant's showing. The defendant asserts that plea counsel's performance was constitutionally deficient because counsel failed to advise him that the plea

would render him automatically deportable and "not . . . eligible for any relief in the Immigration Court" upon any return from travel abroad, advising him instead only that he would "not be able to become a citizen." That contention, however, runs headlong into the judge's credibility determinations -- determinations for which the judge is the "final arbiter" (citation omitted). Scott, 467 Mass. at 344.

To avoid this result, the defendant argues that the judge erred in discounting the affidavits submitted by the defendant and plea counsel concerning the immigration advice provided. The court concludes that an evidentiary hearing was required because, in its view, plea counsel's affidavit casts doubt on the adequacy of the immigration advice. See Ante at . Respectfully, that conclusion overlooks the governing standard of review. See L.L., 470 Mass. at 185 n.27. The question is not whether an appellate court might discern some abstract doubt in the defendant's supporting materials, but whether the judge abused his discretion in determining that the defendant failed to make a sufficiently credible and substantial showing to warrant a hearing. See Goparian, 496 Mass. at 356-357.

Here, the judge -- who presided over the plea colloquy -- evaluated the affidavits against the contemporaneous record and explained why they did not. It is to those affidavits, and the judge's assessment of them, that I now turn.

a.  _Plea counsel's affidavit_.  The defendant contends that the judge was required to credit plea counsel's averments regarding the advice he would have given, and that counsel's characterizations of that advice as "inadequate," standing alone, compelled an evidentiary hearing.  Our precedent forecloses that argument.  A judge is not required to accept assertions in affidavits submitted in support of a motion to withdraw a guilty plea and may assess them under traditional credibility considerations, including, without limitation, bias, self-interest, and delay.  See Commonwealth v. Torres, 469 Mass. 398, 403 (2014).  That rule applies even where counsel's affidavit purports to concede error.  See Commonwealth v. Riley, 467 Mass. 799, 811 n.14 (2014) (implicitly discrediting trial counsel's affidavit concerning alleged deficiencies in his investigation "was within the province of the judge").

The court instead focuses on the judge's determination that plea counsel's affidavit conflicted with counsel's representation during the plea colloquy that he had advised the defendant of the immigration consequences in accordance with Commonwealth v. Clarke, 460 Mass. 30 (2011).  The court emphasizes that Clarke employed varied formulations of counsel's obligation and reasons that it was not until Commonwealth v. DeJesus, 468 Mass. 174 (2014), that we clarified counsel's duty where deportation is virtually inevitable.  Ante at    .

That observation has force. Clarke did summarize Padilla v. Kentucky, 559 U.S. 356 (2010), using varied formulations of the required advice, including informing the client that deportation was "likely," "virtually automatic," and a "risk" (citation omitted). Clarke, 460 Mass. at 31, 35, 45. But Clarke was itself an application of Padilla, which described deportation under the same Federal provision at issue here as "practically inevitable," Padilla, supra at 364, and it expressly adopted Padilla's holding that counsel is constitutionally ineffective when he fails to advise a client that a conviction will render his deportation "virtually automatic," Clarke, supra at 35. See Padilla, supra at 360 (concluding that constitutionally competent counsel would have advised defendant that his conviction made him "subject to automatic deportation").[2] Both cases involved the same removal provision, 8 U.S.C. § 1227(a)(2)(B)(i), under which deportation for certain drug offenses is "practically inevitable." Padilla, supra at 363-364, 368. See Clarke, supra at 46. Where "the

---

[2] In Clarke, 460 Mass. at 46, we did not reach the adequacy of the counsel's advice because counsel was unaware of the defendant's immigration status. Under those circumstances, we concluded that "it [was] highly unlikely that [counsel] ever informed [the defendant] that his guilty pleas carried a substantial risk of deportation," where counsel neither knew her client's status nor recalled discussing any immigration consequences of the plea. Id.

deportation consequence [of a guilty plea] is truly clear," counsel's duty is "equally clear" -- counsel must provide correct advice.  Id. at 42, quoting Padilla, supra at 369.

We later recognized this understanding of Clarke in Commonwealth v. Lys, 481 Mass. 1 (2018), explaining that effective representation requires advising a client of a guilty plea's "truly clear" deportation consequences.  Id. at 5, quoting Padilla, 559 U.S. at 369.  The court in Lys further observed, quoting Clarke, that "as in Padilla, the consequences of the defendant's plea were clear" (citation omitted).  Lys, supra.  The same is true here.  The defendant was convicted under a section of the same criminal statute, G. L. c. 94C, and rendered automatically deportable under the same Federal provision, 8 U.S.C. § 1227(a)(2)(B)(i), as those at issue in Clarke (and later DeJesus).  Accordingly, the court's interpretation of Clarke is not easily squared with Padilla itself, which described deportation under the same statute and for like offenses as "practically inevitable."  Padilla, supra at 364.[3]

---

[3] I also note that several United States Courts of Appeals have understood that Padilla's holding encompasses the "practically inevitable" language that I rely upon.  See United States v. Hercules, 947 F.3d 3, 8 (1st Cir. 2020), quoting Padilla, 559 U.S. at 363-364 ("Theoretically, then, 'removal is practically inevitable' under contemporary law for noncitizens who commit removable offenses"); United States v. Rodriguez-Vega, 797 F.3d 781, 786 (9th Cir. 2015), quoting Padilla, supra

Against that backdrop, the judge reasonably interpreted plea counsel's colloquy representation -- that he had advised the defendant pursuant to Clarke -- as confirming that counsel conveyed the practical inevitability of deportation. The defendant maintains that counsel's colloquy affirmation indicated only that he advised the defendant that he would be "subject to deportation," not that deportation would be automatic. Even if that interpretation is conceivable, the judge's contrary reading -- grounded in his recollection, contemporaneous notes, and review of the plea recording -- was at least equally reasonable and, therefore, cannot constitute an abuse of discretion. Cf. Commonwealth v. Carr, 458 Mass. 295, 303 (2010) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" [citation omitted]).

More fundamentally, the problem with plea counsel's affidavit extends beyond its inconsistency with the plea colloquy: plea counsel's account is not even consistent with the defendant's. Plea counsel avers that he "would have

---

("Her conviction of a removable offense renders her removal 'practically inevitable'"); United States v. Ramos, 470 Fed. Appx. 836, 837 (11th Cir. 2012), quoting Padilla, supra ("The Supreme Court noted in Padilla that, 'if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable'").

explained to [the defendant] that he would be subject to deportation, but not that he would be automatically deported, mandatorily detained by [Immigration and Customs Enforcement], and ineligible for any relief in Immigration Court."  The defendant's affidavit, by contrast, avers only that plea counsel warned the defendant that he "would not be able to become a citizen."  Notably absent from the defendant's affidavit is any assertion that counsel advised him he was "subject to deportation."  Indeed, the defendant affirmatively avers the opposite:  "[Plea counsel] . . . did not tell me that I would be deported from the United States and lose my permanent residency because of this case."[4]  Where plea counsel's and the defendant's affidavits diverge in this manner, the judge was well within his discretion to discredit plea counsel's affidavit.  See Vaughn, 471 Mass. at 405 ("the credibility, weight, and impact of the affidavits are entirely within the motion judge's discretion").

Given those considerations, and the deficiencies in plea counsel's affidavit, the judge acted well within his discretion in treating it as contradictory.  See Commonwealth v. King, 445 Mass. 217, 235 (2005), cert. denied, 546 U.S. 1216 (2006) (resolving "inconsistencies between the testimony" of various witnesses is "solely for the fact finder").  It is not the role

_____

[4] This discrepancy also provides an independently sufficient basis for the judge to discredit the defendant's affidavit.

of this court to second-guess such credibility determinations where, as here, the record supports them.  See, e.g., Lane, 462 Mass. at 597.

Nor was the judge's skepticism of plea counsel's affidavit grounded solely in its inconsistencies.  The affidavit itself provided additional, independent reasons for doubt:  it speaks almost entirely in conditional terms -- describing what counsel would have done or said -- without asserting any actual recollection of the plea or the advice provided.[5]  Cf. Goodreau, 442 Mass. at 350-351 (expert affidavit discussing only "possible conditions" rather than "a[n] [actual] diagnosis of any particular condition" insufficient).  Nor did counsel aver that he remembered meaningful details about the defendant or his case, the immigration advice provided, or the plea.  See id. at 354 (judge may consider "suspicious failure to provide pertinent information from an expected and available source").  Although

---

[5] The court declines to address this issue on the ground that the judge did not expressly rely on the affidavit's conditional language in discrediting plea counsel's affidavit. Ante at    .  That limitation, however, is unwarranted.  We have long recognized that "[w]e may affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings" (quotation and citation omitted). Commonwealth v. Camacho, 483 Mass. 645, 648 (2019), quoting Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).  The wording of plea counsel's affidavit was plainly part of the record before the judge, and it therefore remains properly before us.

counsel averred what he "would have" advised the defendant, he did not describe his customary practice at the relevant time regarding immigration advice to noncitizen defendants.  Contrast Lavrinenko, 473 Mass. at 54 (plea counsel admitted "his usual practice was simply to give all of his clients a standard warning on immigration consequences").  The defendant, despite having access to plea counsel, offered no explanation for these deficiencies or omissions.

Taken together, plea counsel's lack of concrete recollection and his failure to describe his contemporaneous practice provided additional, sound evidentiary bases for the judge's skepticism -- particularly considering the affidavits' failure to agree on what advice was actually given.  In these circumstances, deference to the judge's credibility assessment is not only appropriate -- it is required.  See Commonwealth v. Sylvain, 473 Mass. 832, 835 (2016) (substantial deference owed to judge assessing credibility of affidavits supporting motion to withdraw guilty plea).

b.  The defendant's affidavit.[6]  Turning to the defendant's affidavit, he averred that plea counsel never advised him that his plea would result in mandatory deportation or render him

---

[6] The court does not address the judge's rationale for declining to credit the defendant's affidavit.  Because that credibility determination provides an independent and sufficient basis to affirm, I address it briefly.

ineligible for relief under Federal immigration law. The judge found the affidavit not credible, characterizing it as both self-serving and belated. The defendant contends that this was error, arguing that all defendant affidavits are "self-serving to some point," and that any delay was excusable because he did not learn of plea counsel's deficient advice until he was detained by immigration authorities in February 2021. Neither contention is persuasive.

We have repeatedly recognized that a "motion judge may reject a defendant's self-serving affidavit as not credible," even when uncontradicted (citation omitted). Commonwealth v. McWilliams, 473 Mass. 606, 621 (2016). See Commonwealth v. Rzepphiewski, 431 Mass. 48, 55 (2000) ("A judge is not required to accept as true the allegations in a defendant's affidavit, even if nothing in the record directly disputes them"). Nor was the judge's reliance on timing improper. The affidavit was submitted approximately fourteen months after the defendant's immigration detention, and delay is a well-established factor bearing on credibility. See Torres, 469 Mass. at 403 (judge may evaluate affidavit "in light of factors pertinent to credibility, including . . . delay").

Conclusion. A defendant is not entitled to an evidentiary hearing merely because affidavits are filed; the supporting materials must present specific, credible facts that cast doubt

on a substantial issue.  See Upton, 484 Mass. at 162.  Here, the judge exercised precisely the kind of reasoned, record-based discretion to which appellate courts owe deference.  He presided over the plea colloquy, evaluated the later affidavits in light of his contemporaneous notes and recollection, and articulated specific reasons for finding them unpersuasive.  Because the defendant failed to raise a substantial issue, denying the motion to withdraw his guilty plea without an evidentiary hearing under these circumstances accords with long-standing precedent and falls well within the judge's discretion.

For these reasons, I respectfully dissent.